HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
GRIFFIN ESTES, CA Bar #322095
Assistant Federal Defender
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, California 93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Attorneys for Defendant
DARREN SEVER

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>DARREN SEVER,<br><br>            Defendant. | Case No. 1:24-cr-00232-KES<br><br>NOTICE OF MOTION AND MOTION TO SUPPRESS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS A-F; DECLARATION OF GRIFFIN ESTES<br><br>Date:   July 13, 2026<br>Time:  9:30 a.m.<br>Judge: Hon. Kirk E. Sheriff |

PLEASE TAKE NOTICE that on July 13, 2026, at 9:30 a.m., or as soon thereafter as the matter can be heard in the Courtroom of the Honorable Kirk E. Sheriff, United States District Judge for the Eastern District of California, defendant Darren Sever, through counsel, Assistant Federal Defender Griffin Estes, will bring on for a hearing the following motion to suppress.

**MOTION**

Mr. Sever, by and through his counsel of record, Assistant Federal Defender Griffin Estes, hereby moves this Court for an order suppressing all evidence obtained as a result of the unlawful search carried out by Fresno County Sheriff's Office Detective Fernando Rosario that occurred on or about June 27, 2024.

This motion is made pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Eastern District of California Local Rule 430.1, the Fourth Amendment to the United States Constitution, and such other statutory and constitutional rules as may be applicable.

This motion is based upon the instant motion and notice of motion, the accompanying memorandum of points and authorities, the attached declaration and exhibits, the files and records in the above-entitled case, and any and all other information that may be brought to the Court's attention before or during the hearing on this motion.

Dated:  June 26, 2026

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

*/s/ Griffin Estes*
GRIFFIN ESTES
Assistant Federal Defender
Attorneys for Defendant
DARREN SEVER

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The materials provided in discovery reveal that the investigation in this case began on June 4, 2024, when one electronic file was uploaded to Synchronoss, a cloud software company that provides digital cloud and content management solutions for telecommunications providers. According to a report submitted by Synchronoss to the National Center for Missing and Exploited Children (NCMEC) [1], the file was uploaded to Synchronoss's servers that day, at 16:51:31 UTC. *See* Exh. A at 4. Approximately three days later—on June 7, 2024, at 21:04:03 UTC, Synchronoss submitted, and NCMEC received, a report of the uploaded file, as "[a]pparent [c]hild [p]ornography." Exh. A at 1. The "entire contents of the uploaded file [were not] publicly available." Exh. A at 4. According to the NCMEC Report, the "incident" occurred on June 7, 2024, at 21:04:03 UTC, however, the IP Address from which the file was uploaded was recorded on June 4, 2024 at 16:51:31 UTC. *Id*. Twenty-two days after the photo was originally uploaded, on June 26, 2024, NCMEC prepared CyberTipline Report 194806368 and the report and the uploaded file were made available to the Fresno County Sheriff's Department. *See* Exh. A at 8. Staff at NCMEC did not view the image that was uploaded to their system by Synchronoss. *See* Exh. A at 7.

On June 27, 2024, Fresno County Sheriff's Department (FCSD) Detective Fernando Rosario authored a search warrant in relation to NCMEC CyberTipline Report 194806368. *See* Exh. B. Based on the description of the file, Detective Rosario obtained a search warrant to obtain Mr. Sever's subscriber information. The search warrant was directed at both the "cloud storage provider" known as Synchronoss Technologies and the "telecommunications provider known as Verizon." Exh. B, p. 2. This information led the agents to obtain a subsequent warrant for Mr. Sever's home and electronic devices. *See* Exh. C. A search of Mr. Sever's devices yielded approximately 5 total images that are suspected child sexual abuse material ('CSAM'.)

---

[1] The National Center for Missing & Exploited Children (NCMEC) is a private, nonprofit organization that provides resources for parents, children, law enforcement agencies, schools, and communities to assist in locating missing children and to raise public awareness about ways to prevent child abduction, and child sexual abuse.

The grand jury returned an Indictment on September 19, 2024, charging Mr. Sever with a violation of 18 U.S.C. § 2252(a)(2). ECF Dckt. # 1. At his initial appearance, he denied the allegations. ECF Dckt. # 4. Mr. Sever faces a mandatory-minimum of 15 years in prison. Mr. Sever, who suffers from Parkinson's disease, was released on conditions. ECF Dckt. # 12.

## II.    ARGUMENT

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (internal citations and quotation marks omitted). For this reason, "[t]he bulwark of Fourth Amendment protection . . . is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Accordingly, "warrantless searches" of a person's papers or effects are "presumptively unreasonable" and, thus, violative of the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984); *see also United States v. Anderson*, 101 F.4th 586, 591 (9th Cir. 2024) (en banc).

In this case, on June 26, 2024, Synchronoss reported to NCMEC that a file that included apparent child pornography had been uploaded on their platform. *See* Exh. A at 1. Once with the Fresno County Sheriff's Office, Detective Rosario there viewed the report and the file. *See* Exh. B at 9-10. The deputy then drafted an affidavit in support of the issuance of a search warrant for records from Synchronoss and Verizon. *See* Exhibit B at 6. The detective's viewing of the file that was provided by NCMEC was a warrantless search in violation of the Fourth Amendment.

a.  *United States v. Wilson.*

The above series of investigative steps mirror those that gave rise to the Ninth Circuit's holding in *United States v. Wilson*, 13 F.4th 961 (9th Cir. 2021). There, "Google, using its proprietary technology, 'became aware' that Wilson had attached to emails in his email account . . . four files that included apparent child pornography." *Wilson*, 13 F.4th at 965. Google then "automatically generated and sent an electronic CyberTipline report to NCMEC" that included

the "four email attachments." *Id.* Google's report included "Wilson's email address, secondary email address, and IP addresses." *Id.* After receiving the CyberTipline Report, "NCMEC supplemented Google's report" and "then forwarded the CyberTip[line Report]," and the four email attachments, to the San Diego Internet Crimes Against Children Task Force (ICAC)." *Id.* An officer with the San Diego ICAC Task Force then "looked at Wilson's four email attachments," created a "detailed description[] of each of the[] images," and "applied for warrants to search both Wilson's email account and Wilson's home, describing the attachments in detail in the application." *Id.* at 964, 965, 966.

The problem, however, was that "[n]o one at Google had opened or viewed Wilson's email attachments" "concurrently to submitting the report to NCMEC." *Wilson*, 13 F.4th at 964, 965. This was because "[Google's] [CyberTipline] Report was based on an automated assessment that the images Wilson uploaded were the same as images other Google employees had earlier viewed and classified as child pornography." *Id.* In addition, no one at NCMEC "open[ed] or view[ed]" the attachments that it ultimately passed along to the San Diego ICAC Task Force. *Id.* Accordingly, "[u]ntil [the San Diego ICAC Task Force officer] viewed Wilson's images, no one"—neither an employee at Google nor an employee at NCMEC—"had seen them" and it was"[o]nly by viewing the images" that "the government confirm[ed], and convey[ed] to the fact finder in Wilson's criminal case, that they depicted child pornography under the applicable federal standard." *Id.* at 973.

Before the district court, Wilson moved "to suppress all evidence seized from his email account and residence" on the grounds that the officer's "review of his email attachments without a warrant was impermissible under the Fourth Amendment." *Wilson*, 13 F.4th at 966. The government argued that the warrantless search was permissible under the "private search exception" which "concerns circumstances in which a private party's intrusions would have constituted a search had the government conducted it and the material discovered by the private party then comes into the government's possession." *Id.* at 967. The district court denied Wilson's motion to suppress finding that "the government's warrantless search did not exceed the scope of the antecedent private search" and therefore "did not require a warrant." *Id.*

On appeal, the Ninth Circuit reversed the district court's denial of Wilson's motion to suppress, and squarely addressed "whether the government's warrantless search of Wilson's email attachments was justified by the private search exception to the Fourth Amendment." *Wilson*, 13 F.4th at 964. In considering the issue, the Ninth Circuit stated that "[t]he critical fact" was "that no Google employee viewed Wilson's files before [the San Diego ICAC Task Force officer] did" and "[b]ecause the government saw more from its search than the private party had seen, it exceeded the scope of the private search." *Id.* at 974, 980. As a result, the Ninth Circuit held that "[w]hen the government views anything other than the specific materials that a private party saw during the course of a private search, the government search exceeds the scope of the private search" and the private search exception cannot justify the warrantless search. *Id.*

b.    *The Search in this Case Violated the Fourth Amendment.*

As an initial matter, Mr. Sever contends that the private search exception, created by the Supreme Court in *Walter v. United States*, 447 U.S. 649 (1980) and *United States v. Jacobsen*, 466 U.S. 109 (1984), and applied and addressed by the Ninth Circuit in *Wilson*, should be overruled. "The notion that private searches insulate from Fourth Amendment scrutiny subsequent governmental searches of the same or lesser scope is inconsistent with traditional Fourth Amendment principles." *Walter v. United States*, 447 U.S. 649, 660 (1980) (White, J. and Brennan, J., concurring); *see United States v. Jacobsen*, 466 U.S. 109, 129-34 (1984) (White, J., concurring in part and concurring in judgment); *see also Wilson*, 13 F.4th at 968 ("Beginning from the initial articulation of the private search doctrine, the extent to which it excuses the government from compliance with the warrant requirement of the Fourth Amendment has been the subject of concern."); 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.8(b) (6th ed. 2020) (describing the private search exception as "unsettling" for its potential reach). Moreover, the private search exception is particularly untenable as it relates to electronic communications under a property-based analysis. *See United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016) (then-Circuit Judge Gorsuch noting "the uncertain status of [the private search exception articulated in *United States v. Jacobsen*, 466 U.S. 109 (1984)] after [*United States v. Jones*, 565 U.S. 400 (2012)]").

However, even assuming the private search exception's continued validity in this context, the burden falls on the government to prove that its warrantless search was justified under this exception. *See Wilson*, 13 F.4th at 971; *see also Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (*quoting United States v. Jeffers*, 342 U.S. 48, 51 (1951)). Here, the government cannot meet its burden of showing that an individual at Synchronoss or Verizon actually "view[ed] [the] entire contents" of the file. Exh. A at 4. Indeed, as is set forth below, the chief legal officer from Synchronoss explicitly indicated that no person from the company viewed the file. Similarly, nobody from Verizon conducted a human review of the file. Accordingly, because the government cannot meet its burden to establish that it "saw [no] more from its search than the private party had seen," the deputy's warrantless search violated the Fourth Amendment. *Wilson*, 13 F.4th at 974.

In this case, Synchronoss reported that the incident occurred on June 7, 2024, at 21:04:03 UTC.[2]  *See* Exh. A at 4 (listing the "Incident Time" as "06-07-2024 21:04:03 UTC"). Synchronoss then generated and transmitted the CyberTipline Report to NCMEC at that exact same timestamp. *See* Exh. A at 1 (indicating that the report was "Received by NCMEC" on "06-07-2024 21:04:03 UTC"). If that timeline is accurate, the incident was detected, the report was generated, and the report was transmitted to NCMEC simultaneously. Such a sequence leaves no time for any meaningful human review of the file before it was reported and ultimately forwarded to law enforcement.[3] *See Lawshe v. Verizon Commc'ns, Inc.*, No. 3:24-CV-137-MMH-LLL, 2025 WL 660778, at *2 (M.D. Fla. Feb. 28, 2025) ("When Synchronoss or Verizon find a hash match, they send reports of the match (CyberTips) to NCMEC "instantly," without human review or collecting any information about the subject images other than what the hash match itself provides.")

In order to determine whether, representatives from Synchronoss or Verizon personally

---

[2] "UTC" refers to "Coordinated Universal Time" which is the primary time standard globally used to regulate clocks and time. Coordinated Universal Time is seven or eight hours ahead of the Pacific Time Zone (PST), depending on the time of the year. Converting this to PST, this incident occurred at 2:04 PM on Friday, June 7, 2024.

[3] The report, however, contains another timestamp that raises questions about this chronology. In the "Uploaded File Information" section, the report lists the "Source Information" date as June 4, 2024, at 16:51:31 UTC. *See* Exh. A at 4. This earlier timestamp suggests that the file or underlying data may have been available to Synchronoss for several days before the CyberTipline Report was generated, creating ambiguity as to when the file was first identified, whether any review occurred, and what steps took place between June 4 and June 7, 2024.

Sever - Motion to Suppress                    7

"view[ed] [the] entire contents" of the offending file, Mr. Sever sought a subpoena for records from Synchronoss pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure and undersigned counsel contacted a representative Verizon directly regarding this inquiry. *See* Declaration of Griffin Estes.

First, on March 3, 2026, this Court issued a subpoena to Synchronoss for:

> Any contemporaneous records identifying the employee at Synchronoss Technologies Inc. who viewed the entire contents of the file that was uploaded to Synchronoss on June 7, 2024, that is the subject of the National Center for Missing and Exploited Children (NCMEC) CyberTipline Report 194806368 […].

Exh. D at 3.

The subpoena was served on Synchronoss on March 4, 2026. *See* Exh. E.  In a series of emails, the Chief Legal Officer from Synchronoss indicated that the company "does not view the files produced relating to the Cyber Tips", and that this review is conducted by a third party contracted directly by Verizon. *See* Exh. E.

Subsequently, counsel for Mr. Sever contacted Verizon regarding the same subject. *See* Declaration of Griffin Estes and Exh. F. In response, Jason Forman, a Senior Analyst with Verizon's Security Assistance Team, informed counsel that a subpoena would not be necessary to answer the inquiry. Mr. Forman stated that Verizon does not view users' uploaded photographs and neither has the ability nor any internal process to do so. He further explained that Verizon does not view photographs stored in cloud services because those services are operated by third-party providers. *See* Exh. F.

In summary, neither Verizon nor Synchronoss has indicated that any employee personally reviewed the file that initiated the investigation into Mr. Sever. The available evidence therefore calls into question the accuracy of a critical representation contained in the CyberTipline Report. Specifically, the report answers "Yes" to the question, "Did Reporting ESP view entire contents of uploaded file?" Exh. A at 4. Yet, both Verizon and Synchronoss have represented that their personnel do not personally view users' uploaded files and, in this case, have identified no individual who reviewed the file. On the present record, the Court may reasonably conclude that the CyberTipline Report's representation that the reporting ESP viewed the entire contents of the

Sever - Motion to Suppress                    8

file is inaccurate or, at a minimum, unsupported by any identified human review. NCMEC, for its part, indicated that its staff had not viewed the file that had been reported and provided by Synchronoss. *See* Exhibit A at 7 ("NCMEC staff have not viewed the following uploaded files and have no information concerning the content of the uploaded files.").

Yet, the search warrant authored by Det. Rosario indicates that "The [NCMEC] report also included the file(s) provided by Synchronoss Technologies, Inc. that they believed contained child sexual abuse material. This belief was based upon a Synchronoss Technologies, Inc. representative physically viewing the files in question prior to submitting the report to NCMEC." Exh. B, at 9. This representation is inaccurate. Yet, it is central to establishing the probable cause necessary for the magistrate to sign the warrant. Det. Rosario made this statement in the warrant with reckless disregard to the truth; the timeline set forth in the NCMEC report of simultaneous reporting of the incident should have alerted him that there was no time for meaningful human review. As a result a *Franks* hearing is required. *United States v. Franks*, 438 U.S. 154 (1978) The United States Supreme Court has held that such a hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56; *see also United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005) ("Our case law does not require clear proof of deliberate or reckless omissions or misrepresentations at the pleading stage."). If at the hearing the Mr. Sever establishes by a preponderance of the evidence that the affiant recklessly or deliberately omitted information and that the inclusion of such information renders the affidavit insufficient to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

In summary, suppression of all evidence obtained as a result of the warrantless search is required. Indeed, absent the information that the FCSO deputy obtained by viewing the file without a warrant, his affidavit would not support the issuance of the June 27, 2024 Fresno County Superior Court search warrant for Synchronoss and Verizon records. *See* Exhibit B;

Sever - Motion to Suppress                    9

*Wilson*, 13 F.4th at 973 (holding that if the officer's affidavit in support of the warrant had been "excised of the tainted evidence" it "would not support issuance of the search warrant for Defendant's email account"). In addition, all evidence obtained as a result of the subsequent search of Mr. Sever's person, vehicle, and residence on August 20, 2024, and thereafter, pursuant to the federal search warrant issued on August 19, 2024, must also be suppressed because the exclusionary rule applies to "both the primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," i.e., "the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotations omitted)); *see also Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

### III.   CONCLUSION

The search that took place on or about June 26, 2024, of the file reported by Synchronoss, and then provided to law enforcement by NCMEC, was a warrantless search. It was *per se* unreasonable, and it violated the Fourth Amendment's warrant requirement. As the Supreme Court has indicated, it is "the most basic constitutional rule" that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable." *Coolidge*, 403 U.S. at 454-55 (internal citations and quotation marks omitted). Any exception to this rule must be "jealously and carefully drawn" and "the burden is on those seeking the exception to show" that it applies. *Id.* at 455 (internal citations and quotation marks omitted). Because the government cannot meet its burden here, suppression of all evidence obtained as a result of the warrantless search that occurred on or about June 26, 2024, is warranted.

Dated: June 26, 2026

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

*/s/ Griffin Estes*
GRIFFIN ESTES
Assistant Federal Defender
Attorneys for Defendant
DARREN SEVER