ERIC GRANT
United States Attorney
CALVIN LEE
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARREN SEVER,<br><br>Defendant. | CASE NO.  1:24-CR-00232-KES-EPG<br><br>GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br>Date: September 14, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Kirk E. Sherriff |

The Court should deny Defendant Darren Sever's Motion to Suppress because the files initially uploaded by the Defendant onto Verizon's cloud were reviewed as child sexual abuse material ("CSAM") by trained human content moderators contracted by Verizon before they were reported to the National Center for Missing and Exploited Children ("NCMEC"). Verizon's third-party content moderators, therefore, performed a private search within a longstanding exception to the Fourth Amendment's warrant requirement. By extension, law enforcement did not exceed the scope of the private search conducted by Verizon's third-party content moderators when law enforcement viewed the same file. Accordingly, the Court should deny Defendant's motion as there was no Fourth Amendment violation.

## I.     STATEMENT OF FACTS

### A.     Verizon's Cloud Content Moderation System in June 2024

In June 2024, a content moderation company called WebPurify contracted with Verizon to offer human review of possible CSAM images hosted on Verizon servers for reporting of confirmed CSAM

files to NCMEC. Exhibit 1, at ¶ 2. Specifically, if Verizon's third-party cloud host Synchronoss automatically detected potential CSAM, Synchronoss would automatically forward the possible CSAM to WebPurify for human review. Exhibit 1, at ¶ 4. In June 2024, WebPurify's content moderation team that received files flagged by Synchronoss consisted of six full-time WebPurify employees in Hyderabad, India. *Id.* These content moderators would take turns working in shifts to ensure that at any given time 24 hours a day and 365 days a year one of the six content moderators was on duty to review potential CSAM flagged and forwarded by Synchronoss. *Id.* Each of these content moderators were trained on NCMEC's categories of CSAM and knew how to code images they personally confirmed to be CSAM from review with relevant NCMEC categories. *Id.* The content moderators used a tool called Montage. *Id.* at ¶ 5. Whenever Synchronoss referred a file for review, Montage would generate a link for the content moderator to click to open and view the referred file in Montage. *Id.* at ¶ 5. If the content moderator confirms the file as CSAM with their own eyes, they assign the file a NCMEC CSAM category and click a button to share their evaluation with Verizon for creation of a CyberTipline Report ("CyberTip") to NCMEC. *Id.* at ¶ 6. Visual review by a human content moderator is a necessary step in WebPurify's assistance in the creation of a CyberTip. *Id.* at ¶ 7.

**B.    CyberTipline Report 194806368**

In early June 2024, Synchronoss detected potential CSAM uploaded to the Verizon Cloud, thereby beginning the process that would generate CyberTipline Report 194806368.

Synchronoss detected a potential CSAM file on the Verizon Cloud and determined the source to be the user of the IP address 172.13.248.41 at 4:51 p.m. UTC on June 4, 2024. ECF No. 50-1, at 5 ("Source Information"). Synchronoss automatically flagged the potential CSAM file because the file contained unique identifying metadata numbers known as "Hash" values that matched known confirmed CSAM files. *Id.* at 6 ("Automated file categorization is based on NCMEC's review of uploaded files in this report OR a 'Hash Match' of one or more uploaded files to visually similar files that were previously viewed and categorized by NCMEC"). The IP address and associated phone number were eventually connected to the Defendant, Darren Sever. *Id.*

Pursuant to WebPurify's contract with Verizon, WebPurify's content moderators in Hyderabad, India, would have received a link on their Montage review platform to review the suspected CSAM

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

connected with IP address 172.13.248.41. Exhibit 1, at ¶ 5. The eventual generated CyberTip 194806368 generated on June 7, 2024 ("Received by NCMEC on 06-07-2024 21:04:03 UTC"), specifically notes that the content reviewer acting on behalf of the Electronic Service Provider ("ESP") had assigned the file a NCMEC category of "A2," referring to a depiction of a "Prepubescent Minor" and "the lascivious exhibition of the anus, genitals, or pubic area of any person, where a minor is engaging in the lascivious exhibition or being used in connection with sexually explicit conduct." ECF No. 50-1, at 1, 5-6 (noting "A2" under "Image Categorization by ESP"). On June 26, 2024, Fresno Police Department Detective Fernando Rosario received CyberTip 194806368 from NCMEC and observed that the file contained an image of three nude minor children laying on a bed exposing their genitalia towards the camera. *Id.* at 33.

## II.    <u>ARGUMENT</u>

The Defendant's CSAM image file was identified under the private search exception to the Fourth Amendment which allows law enforcement officers to review information without a warrant where that same information was previously reviewed by a third-party private actor. Here, Verizon contracted with third-party WebPurify, whose team of six content moderators working on constant rotation in Hyderabad, India, reviewed the Defendant's image file after Synchronoss automatically flagged it as potential CSAM. This process led to the generation of CyberTip 194806368 and law enforcement's review of the Defendant's CSAM image.

### A.    <u>The Private Search Exception Applies Because Law Enforcement Did Not Exceed the Scope of the Private Search Conducted by a WebPurify Employee.</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and "no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. A "search" occurs when the government infringes upon an expectation of privacy that society considers reasonable or where the government physically intrudes on a constitutionally protected area to obtain information. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Jones*, 565 U.S. 400, 407-08 (2012). Fourth Amendment protections, however, do not apply to a "private search." The private search doctrine is an exception to the Fourth Amendment's protections where "a private party's intrusions would have constituted a search had the

government conducted it and the material discovered by the private party then comes into the government's possession." *United States v. Wilson*, 13 F.4th 961, 967 (9th Cir. 2021). "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *United States v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013) (quoting *Jacobsen*, 466 U.S. at 117). Any "additional invasion of . . . privacy by the government agent must be tested by the degree to which they exceed[ ] the scope of the private search." *Id.* (quoting *Jacobsen*, 466 U.S. at 115). The defendant bears the burden of establishing that his Fourth Amendment rights were violated by the challenged search. *See Rakas v. United States*, 439 U.S. 128, 130 n.1 (1978) ("the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated"); *see United States v. Nuesca*, 945 F.2d 254, 258 (9th Cir. 1991).

Here, an employee of WebPurify necessarily reviewed the relevant file uploaded by the defendant onto Verizon's cloud services hosted by Synchronoss. The declaration provided by WebPurify's Founder, Senior Vice President, and Head Jonathan Freger establishes that it would be impossible for WebPurify to permit a file automatically flagged by Synchronoss to be forward along to NCMEC in a CyberTip by Verizon without a human content moderator based in Hyderabad, India, personally reviewing the entire contents of the file on Montage. *See* Exhibit 1, at ¶¶ 4-7. The CyberTip also stated "Yes" that the Electronic Service Provider ("ESP") – here Verizon with the support of WebPurify – reviewed the full contents of the file. *See* ECF No. 50-1, at 5. Accordingly, there is sufficient evidence to find that a WebPurify employee, working on behalf of Verizon, conducted a private search of the file before its inclusion in a CyberTip and the CyberTip's submission to NCMEC.

The Defendant suggests that because no Synchronoss or Verizon employee viewed the CSAM file in question before it was reported to NCMEC, the search was improper like the search in *Wilson*, where Google had submitted a CyberTip report to NCMEC without any employee viewing the purported CSAM. 13 F.th at 964, 973. This case, however, is readily distinguishable from *Wilson* because the evidentiary record before this Court shows that a human content moderator working on behalf of the reporting Electronic Service Provider necessarily reviewed the Defendant's CSAM file after it was automatically detected by Synchronoss. Mr. Freger's declaration on behalf of WebPurify explains in detail how an employee must actually review a file and assign it a specific NCMEC category based on

their training and experience before WebPurify can forward the file and the employee's findings to Verizon for submission of the CyberTip. Exhibit 1, at 4. Through Mr. Freger's declaration and the CyberTip, the government has met its burden of establishing that an employee working on behalf of the party submitting the CyberTip viewed the file – thereby conducting a private search – before the file's submission to NCMEC. *See United States v. Panuco*, No. 1:24-cr-00090-JAM-BAM, 2025 WL 2779979, at *4 (E.D. Cal. Sep. 30, 2025) (holding that the private search exception applied because "the CyberTip states that a Discord employee reviewed the entire file" and "the Government has submitted a declaration . . . explaining that a Discord content moderator would have had to review the . . . file in order to generate the CyberTip"). Subsequently, Det. Rosario did not exceed the scope of the WebPurify employee's private search, as he viewed the exact same file provided by Verizon to NCMEC based on that WebPurify employee's review and made observations entirely consistent with the way the Webpurify content moderator coded the image by NCMEC category.

**B.      The Defendant Has Not Shown that the Law Enforcement Affiant Engaged in Deliberate Falsehood or Was Reckless With the Truth.**

The Defendant also suggests that a *Franks* hearing is needed because of Det. Rosario's belief in probable cause was "based upon a **Synchronoss Technologies, Inc** representative physically viewing the files in question prior to submitting the report to NCMEC." Such a hearing is not necessary. To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing of two things: that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit; and that the allegedly false statement was necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). Negligence or innocent mistakes are not enough to meet this showing. *Franks*, 438 U.S. at 171; *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987); *United States v. Romero*, 382 F.Supp.3d 966, 976 (E.D. Cal. 2019). Furthermore, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72 (cited by *Romero*, 382 F.Supp.3d at 966).

Indeed, Det. Rosario did not engage in deliberate falsehood or reckless disregard for the truth

because Det. Rosario reiterated exactly what Verizon disclosed to NCMEC in CyberTip 194806368. Det. Rosario also based his good faith belief on the statements contained in CyberTip 194806368, which confirmed that the service provider did actually review the suspected CSAM and that a reporter working for the provider assigned a CSAM category to it, even if the CyberTip did not mention WebPurify or its role. *See United States v. Rohani*, 717 F.Supp.3d 981, 991 (D. Or. 2023) (holding that a good-faith exception applies where Defendant cannot show that an agent intentionally misled a Magistrate Judge or exhibited a reckless disregard for the truth); ECF No. 50-1, at 1. Det. Rosario had no reason to doubt the accuracy of the CyberTip. The misattribution of the human review was ultimately immaterial to probable cause as the name of the third-party reviewer is immaterial to probable cause. Although Det. Rosario was mistaken that it was in fact a WebPurify employee – not a Synchronoss Representative – who conducted the physical review, he nevertheless was correct in his belief that a human being working together with Synchronoss physically reviewed the file. Accordingly, the Defendant has not met the requirements for a *Franks* hearing.

The Court should therefore rule consistently with precedent and the facts of this case by denying the Defendant's motion.

### III.    CONCLUSION

Based on the foregoing, the government respectfully requests that the Court deny the Defendant's motion to suppress based on the private search exception to the warrant requirement of the Fourth Amendment.

Dated:  July 31, 2026

ERIC GRANT
United States Attorney


By:  /s/ CALVIN LEE
CALVIN LEE
Assistant United States Attorney

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE